Ángel Luis COLÓN MARTINEZ, a/k/a
Ángel L. Colón Martinez, Debtor.

Ángel Luis Colón Martinez, Appellant.

BAP No. PR 11–100.
Bankruptcy No. 10–09746–EAG.

United States Bankruptcy Appellate Panel
for the First Circuit.

May 14, 2012.

José L. Ramírez de León, Esq., on brief for Appellant.

Before BOROFF, DEASY, and BAILEY, United States Bankruptcy Appellate Panel Judges.

BOROFF, Bankruptcy Judge.

Ángel Luis Colón Martinez ("the Debtor") appeals from an order of the United States Bankruptcy Court for the District of Puerto Rico dated November 22, 2011 (the "Order"). By the Order, the bankruptcy court both dismissed the Debtor's chapter 11 case and disqualified him from filing a new case for 180 days pursuant to § 109(g).[2] For the reasons set forth below, the Order is **AFFIRMED.**

## BACKGROUND

The Debtor owns a home, residential rental property, unimproved land, and a commercial building (collectively, the "Properties") in Puerto Rico. On October 18, 2010 (the "Petition Date"), he filed a voluntary petition for chapter 11 relief, *pro se.* In his schedules, the Debtor reported that, as of the Petition Date, the total value of the Properties was $1,975,000. He also identified his largest secured creditor as Allied Financial, Inc. ("Allied"), holding secured claims totaling $665,000.[3]

Shortly after case commencement, Allied filed a motion to dismiss the case, claiming that it was filed in bad faith (the

"Motion to Dismiss").[4] The bankruptcy court responded by scheduling a status conference for December 2, 2010. Following that conference, the court entered an order providing the Debtor with an opportunity to obtain counsel by January 18, 2011, and giving that counsel until February 1, 2011, to oppose the Motion to Dismiss. Not long thereafter, the Debtor filed applications to retain counsel and an accountant, both of which applications the bankruptcy court approved on January 14, 2011. The Debtor's new counsel filed an opposition to the Motion to Dismiss on February 5, 2011, albeit four days *after* the court-ordered deadline. Ultimately, the bankruptcy court denied the Motion to Dismiss.

On February 9, 2011, Allied filed a motion to "confirm termination or absence of stay" (the "Stay Termination Motion"). The Debtor's counsel filed a response on February 22, 2011, and Allied timely replied. The bankruptcy court set the Stay Termination Motion for hearing on April 7, 2011. On April 4th, however, the Debtor, reportedly without the consent or even knowledge of his attorney, filed a motion with certain documents, asking that they be maintained under seal.[5] Counsel for the Debtor apparently found this development troubling and immediately followed with a motion seeking to withdraw, arguing that he was not able to effectively communicate with his client. Allied re-

---

**2.** Unless otherwise indicated, the terms "Bankruptcy Code," "section" and "§ " refer to Title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.,* as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109–8, 119 Stat. 37.

**3.** It is unclear from the Debtor's schedules which of the Properties were covered by Allied's mortgages.

**4.** Although the Motion to Dismiss is not part of the record, we may take judicial notice of

the bankruptcy court's docket. *See Aja v. Emigrant Funding Corp. (In re Aja),* 442 B.R. 857, 861 n. 7 (1st Cir. BAP 2011) (ruling Panel may take judicial notice of the proceedings in bankruptcy court). We have also taken information from the bankruptcy court docket elsewhere in this opinion in order to fully explain the sequence of events.

**5.** The nature of these documents is not reflected in the record.

sponded just as quickly by opposing the withdrawal and complaining that these developments were just another strategy by the Debtor to delay the proceedings.

All of the foregoing matters were before the bankruptcy court on April 7, 2011, and it acted decisively. The court: (1) confirmed the ruling in *Jumpp v. Chase (In re Jumpp)*, 356 B.R. 789 (1st Cir. BAP 2006), that any termination of the stay by dint of § 362(c)(3) had no impact on property of the estate; (2) returned the motion under seal to the Debtor; (3) ordered the Debtor and his counsel to confer with respect to the motion under seal and motion to withdraw; (4) ordered counsel for the Debtor to inform the court within ten days as to whether he wished to pursue the motion to withdraw; and (5) advised the Debtor that the 300–day deadline to file a chapter 11 plan was August 15, 2011.

The opportunity granted by the court to the Debtor and his counsel to mend fences came to naught. On April 26, 2011, the Debtor's counsel renewed his request for withdrawal. That request was granted on June 1st.[6]

On June 22, 2011, Allied filed a motion to convert the case to one under chapter 7 (the "Motion to Convert"). On July 29, 2011, the bankruptcy court denied the Motion to Convert without prejudice. At the same time, the court scheduled a status conference in the case for August 4th.

On August 4, 2011, the court conducted the promised status conference, but then ordered it continued to August 10th because the Debtor, who did appear by telephone, claimed not to have received appropriate notice of the hearing. The court did take the opportunity to urge the Debtor to

retain counsel who was allowed to practice in the bankruptcy court.

The August 10th hearing was later continued to August 30, 2011 at the request of Allied's counsel. On August 11th, however, Allied filed a motion for reconsideration (the "Reconsideration Motion") of the court's July 29 order denying the Motion to Convert. The Debtor opposed and the Reconsideration Motion was also set for hearing on August 30th.

At the rescheduled status conference on August 30, 2011, the court recommended to the Debtor that he take advantage of publicly available information regarding the bankruptcy process, but warned him that he was "required to know the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure and the Puerto Rico Bankruptcy Rules." At the conclusion of the status conference, the court granted the Debtor another 15 days to obtain new counsel, directed him to file a disclosure statement and plan by October 3, 2011, and set the hearing on the approval of the disclosure statement for November 3, 2011 ("the August 30, 2011 Order"). The court took the Motion for Reconsideration under advisement, but denied same shortly thereafter.

On September 6, 2011, the Debtor filed a motion requesting an additional 90 days to obtain counsel, representing that he was in the midst of negotiations with a prospective attorney and would then require the retention of an accountant. In its opposition to the motion, Allied argued that a further extension was not justified.

The Debtor failed to file either a plan or disclosure statement by October 3, 2011. On October 5, 2011, Allied filed another motion to dismiss the case (the "Second

---

**6.** The Debtor's accountant sought leave to withdraw on April 20, 2011; leave was granted on July 27, 2011.

Motion to Dismiss"). At a November 3, 2011 hearing on the Second Motion to Dismiss, the bankruptcy court continued the matter to November 22, 2011, but directed the Debtor to show cause by November 21, 2011 why the case should not be dismissed for failure to comply with the August 30, 2011 Order ("Order to Show Cause"). The "minutes of proceeding and order" memorializing the Order to Show Cause specifically provided, in pertinent part:

> The motion to dismiss with prejudice filed by [Allied] is rescheduled for 11/22/2011, at 9:30 a.m. Movant has waived the 30 days determination period. Debtor has until 11/21/2011 to respond in writing to the Memorandum of Law (docket entry # 130). [The] Debtor is ordered to show cause as to why the case should not be dismissed for failure to comply with the [c]ourt's order to have filed a [d]isclosure [s]tatement and an amended plan by October 3, 2011, and as to why the [c]ourt should not apply section 109[g] of the Bankruptcy Code and dismiss the case with a 180–day[ ] bar from re-filing for having failed to comply with the [c]ourt[']s order to have file[d] the [d]isclosure [s]tatement and the plan by October 3, 2011. [The] Debtor is ordered to respond in writing to the [O]rder to [S]how [C]ause by or before November 21, 2011. The [c]ourt denies the motion requesting extension of time to obtain new legal representation (docket entry # 112) without prejudice to [the] Debtor hiring an attorney at any time he can find an attorney to represent him.

The Debtor failed to file a response to the Order to Show Cause. But he did file a Disclosure Statement and Plan on November 21, 2011, albeit approximately six weeks *after* the court-ordered deadline. At the November 22, 2011 hearing, Allied urged the court to dismiss the case for cause pursuant to § 1112(b), with a 180–day disqualification from filing any new case. As grounds for dismissal, Allied asserted that the Debtor's conduct throughout the bankruptcy proceedings "evidence[d] a record of delay." Allied further complained that: (1) the instant case, the Debtor's second within a one-year period, was filed on the eve of foreclosure of three of the four Properties; (2) the Debtor failed to comply with the August 30, 2011 Order; and (3) the Plan and Disclosure Statement were not only late, but also deficient. In particular, Allied claimed that the Plan failed to include a liquidation analysis and a proposed classification and treatment of creditors; and the Disclosure Statement lacked relevant exhibits and sufficient disclosure regarding claims, including those held by Allied.

Counsel for the United States Trustee represented to the court that he had not had sufficient time to review the Disclosure Statement because it was filed late. The Debtor, on the other hand, again described the challenge of finding representation, as well as the difficulty of responding to motions in his *pro se* capacity.

> The court then announced:
>
> ... I have had an opportunity to look over your Disclosure Statement and Plan. And on its face, it completely is inadequate. It just doesn't meet any of the basic requirements of [c]hapter 11 of the Bankruptcy Code. So I am dismissing your case.
>
> Well, first, the [c]ourt—the [c]ourt is dismissing the case with a 180–day bar from re[-]filing, under [§ ] 109(g) of the Code, for failure to comply with the deadlines imposed by the [c]ourt to file a [d]isclosure [s]tatement and [p]lan which meets at least the minimum requirements of the Code. And also for failure to respond to the [c]ourt's Order to

Show Cause by November 21, 2011.... And also for the reason stated in [c]ourt by counsel for Allied and counsel for the U.S. Trustee, all [of] which I find to be sufficient reasons to dismiss this case with a 180–day bar. Also, given the fact that this is your second filing, and your first filing had basically the same problems as this filing.

At the conclusion of the hearing, after the Debtor reiterated his inability to find an attorney, the court observed:

I'm sorry you couldn't find an attorney. And your case has been allowed to go as far as it has gone, because you are a [*pro se* ] [d]ebtor, but you've enjoyed the benefits of being under the protection of the Bankruptcy Code.... since over a year now. And you also enjoyed similar benefits in your prior filing for a substantial amount of time, which also that case went nowhere, because you weren't able to comply with the Bankruptcy Code requirements. And now the [c]ourt is determining that your creditors' rights have to be respected too.

The Order, which was docketed on December 20, 2011, specifically provided:

Case is dismissed with a 180[-]day bar from re-filing under [§ 109(g) ] of the Bankruptcy Code for failure to comply with the deadlines imposed by the [c]ourt to file a disclosure statement and the plan, which is the minimum requirement by the [c]ourt and also for failure to respon[d] to the [ ] [O]rder to [S]how [C]ause by November 21, 2011. A transcript of the hearing was ordered.

The Debtor filed a timely notice of appeal. Now represented by counsel, he identifies the following issues on appeal: (1) whether the bankruptcy court erred when it denied his request for an extension of time to retain an attorney, thereby depriving him of his purported "right to choose counsel"; and (2) whether the bankruptcy court erred in dismissing his case with a disqualification from filing a new case for 180 days under § 109(g).

On January 25, 2012, the Debtor filed a Motion for Stay Pending Appeal, which the court denied, ruling as follows:

The court having determined at the hearing of November 22, 2011 that the [D]ebtor failed to comply with the August 30, 2011 [O]rder ( [d]ocket [e]ntry # 116) to file a disclosure statement and plan by October 3, 2011 and the [ ] [O]rder to [S]how [C]ause ( [d]ocket [e]ntry # 133), and that the [D]isclosure [S]tatement and [P]lan filed November 21, 2011 were so facially defective as to fail to satisfy the minimum requirements of the Bankruptcy Code, the court now finds it unlikely that [the] [D]ebtor will be able to establish an abuse of discretion by the bankruptcy court in dismissing the case. *See Howard v. Lexington Inv*[s*., Inc.*]*.,* 284 F.3d 320 (1st Cir.2002). Therefore, the court determines that [the] [D]ebtor has failed to establish that there is likelihood of success on the merits of the appeal. *See Pye ex rel. [N.L.R.B.] v. Excel Case Ready,* 238 F.3d 69, 73 (1st Cir.2001). Accordingly, [the] [D]ebtor's motion requesting that this case be stayed pending appeal ( [d]ocket [e]ntry # 158) is hereby DENIED.

Thereafter, the Debtor filed a Motion for Stay Pending Appeal with the Panel, which the Panel similarly denied.

### JURISDICTION

▮ A bankruptcy appellate panel is "duty-bound" to determine its jurisdiction before proceeding to the merits, even if not raised by the litigants. *Boylan v. George E. Bumpus, Jr. Constr. Co., Inc. (In re George E. Bumpus, Jr. Constr. Co., Inc.),* 226 B.R. 724, 725–26 (1st Cir. BAP 1998) (citation omitted). The bankruptcy appellate panel has jurisdiction to hear

appeals from "final judgments, orders, and decrees" pursuant to 28 U.S.C. § 158(a)(1), "or with leave of the court, from interlocutory orders and decrees" pursuant to 28 U.S.C. § 158(a)(3). *Fleet Data Processing Corp. v. Branch (In re Bank of New England Corp.)*, 218 B.R. 643, 645 (1st Cir. BAP 1998) (internal quotations omitted). "An order dismissing a chapter 11 case is a final, appealable order." *Farnsworth v. Morse (In re Farnsworth)*, No. MW 08–086, 2009 WL 8466786, at *6 (1st Cir. BAP Nov. 20, 2009) (citation omitted); *see also Gilroy v. Ameriquest Mortgage Co. (In re Gilroy)*, No. BAP NH 07–054, 2008 WL 4531982, at *4 (1st Cir. BAP Aug. 4, 2008) (citation omitted). Accordingly, we have jurisdiction to hear this appeal.

### STANDARD OF REVIEW

■ Although the bankruptcy court here did not specify the Code provision upon which it relied, the causes for dismissal which it enumerated fall squarely within § 1112(b), as discussed below. We have previously ruled that when considering a § 1112(b) dismissal, we review the bankruptcy court's findings of fact for clear error and conclusions of law *de novo*. *In re Gilroy*, 2008 WL 4531982, at *4 (citations omitted).

### DISCUSSION

## I.  Right to Counsel

■ The first issue which the Debtor presents on appeal, namely, whether the bankruptcy court deprived him of his right to counsel, is easily dispatched. In a recent decision, we noted that "[t]he United States Supreme Court has held that there is no Sixth Amendment right to counsel in

civil cases." *Lussier v. Sullivan (In re Sullivan)*, 455 B.R. 829, 836 (1st Cir. BAP 2011) (citing *Lassiter v. Dep't of Soc. Servs. of Durham County*, 452 U.S. 18, 24–28, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981); *Ferrell v. Countryman*, 398 B.R. 857, 866 (E.D.Tex.2009)). Accordingly, we "decline[d] to extend the constitutional right to effective assistance of counsel to the bankruptcy context." *Id.* Thus, the Debtor's argument that he was deprived of his purported "right to counsel" is based on a faulty premise. Furthermore, contrary to the Debtor's assertion, the record in this case reflects not only that the bankruptcy court directed him to obtain counsel on at least four separate occasions, but also that it afforded him ample time to do so.[7]

## II.  Dismissal

### A.  Section 1112(b)

Section 1112(b) governs conversion or dismissal of a chapter 11 case. *In re Farnsworth*, 2009 WL 8466786, at *6; *see also Gollaher v. United States Trustee (In re Gollaher)*, No. UT–11–019, 2011 WL 6176074, at *3 (10th Cir. BAP Dec. 13, 2011). Section 1112(b)(1) provides, in pertinent part, that:

> on request of a party in interest, and after notice and a hearing, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause unless the court determines that the appointment under section 1104(a) of a trustee or an examiner is in the best interests of creditors and the estate.

---

7.  Additionally, the record reflects that 58 days elapsed between the September 6, 2011 filing of the Debtor's motion for extension of time to obtain counsel and its November 3, 2011 denial. Another 19 days passed before the court dismissed the case on November 22, 2011. Thus, the Debtor effectively received 77 out of the 90 days he originally sought, and nonetheless failed to hire an attorney.

11 U.S.C. § 1112(b)(1). Numerous courts have held that § 1112(b)(1) also permits a bankruptcy court to dismiss a chapter 11 case, *sua sponte*, for cause. *See, e.g., Keven A. McKenna, P.C. v. Official Comm. of Unsecured Creditors (In re Keven A. McKenna, P.C.)*, No. 10–472 ML, 2011 WL 2214763, at *3 (D.R.I. May 31, 2011) (citations omitted); *see also Finney v. Smith (In re Finney)*, 992 F.2d 43, 45 (4th Cir. 1993); *Hayes v. Production Credit Ass'n of Midlands*, 955 F.2d 49 (10th Cir.1992); *Pagano Dev. Co., Inc. v. The Marlboro P'ship (In re Pagano Dev. Co., Inc.)*, No. 11–4448(FSH), 2011 WL 5082203, at *3 (D.N.J. Oct. 25, 2011).[8]

■ "BAPCPA limited the bankruptcy court's discretion to dismiss or convert a chapter 11 petition for cause by mandating conversion or dismissal if the movant establishes cause, unless the debtor presents unusual circumstances, the debtor meets certain criteria justifying the act or omission and likelihood of confirming a plan, or the bankruptcy court finds that the appointment of a trustee is in the best interest of creditors." *In re Gilroy*, 2008 WL 4531982, at *4 (citation omitted). In essence, § 1112(b)(1) "requires the bankruptcy court to make two determinations: (1) cause exists to convert or dismiss, and (2) which option is in the best interests of creditors and the estate." *In re Gollaher*, 2011 WL 6176074, at *3 (citations omitted); *see also In re Farnsworth*, 2009 WL 8466786, at *6.

### 1. Cause

■ Although the Code does not define "cause" as that term is used in § 1112(b), "[§ ] 1112(b)(4) provides a nonexclusive

list of what constitutes cause." *In re Gilroy*, 2008 WL 4531982, at *4. That list includes, *inter alia*, the "failure to comply with an order of the court" (§ 1112(b)(4)(E)), and the "unexcused failure to satisfy timely any filing or reporting requirement ..." *See* 11 U.S.C. § 1112(b)(4)(F). Courts also dismiss chapter 11 cases for "unreasonable delay by the debtor that is prejudicial to creditors." *See, e.g., In re Abijoe Realty Corp.*, 943 F.2d 121, 128 (1st Cir.1991); *In re Camann*, No. 00–11090, 2001 WL 1757075, at *4 (Bankr.D.N.H. Mar. 19, 2001). In addition, the court may convert or dismiss a case "for reasons that are not specifically enumerated in the section, provided that these reasons are sufficient to demonstrate the existence of cause." *In re Camann*, 2001 WL 1757075, at *2 (citations omitted). "One ground, however, is sufficient, standing alone, to establish cause under the statute." *In re McKenna*, 2011 WL 2214763, at *1 (citations omitted).

■ In the instant case, the bankruptcy court listed the following reasons for dismissal: (1) the Debtor's failure to comply with the August 30, 2011 Order; (2) the Debtor's failure to respond to the Order to Show Cause; (3) all of the reasons advanced by counsel for Allied and the United States Trustee; and (4) the fact that this case was the Debtor's second within a year, and suffered from the same flaws as the first. While the court did not reference § 1112(b), the first and second reasons which it cited for dismissal—the Debtor's failure to file a plan and disclosure statement by October 3, 2011 and the failure to comply with the Order to Show Cause—fall squarely within

8. *But cf. In re Moog*, 774 F.2d 1073, 1075–76 (11th Cir.1985) (ruling § 1112(b)'s explicit language and legislative history indicate bankruptcy court without power to dismiss *sua sponte* ); *Gusam Rest. Corp. v. Speciner (In re Gusam Rest. Corp.)*, 737 F.2d 274, 276 (2d Cir.1984) (holding bankruptcy court without power to convert, *sua sponte*, due to § 1112(b)'s "party in interest" requirement).

§§ 1112(b)(4)(E) and 1112(b)(4)(F), respectively. Allied's argument that the Debtor engaged in a pattern of delay over a 13–month period, adopted by the bankruptcy court as its third reason for dismissal, also qualifies as "unreasonable delay by the debtor that is prejudicial to creditors."

We have previously ruled that "the most obvious example of an unreasonable delay prejudicial to creditors is the unjustified failure to file a reasonable plan of reorganization in a timely fashion." *De Jounghe v. Mender (In re De Jounghe)*, 334 B.R. 760, 771 (1st Cir. BAP 2005). Additionally, bankruptcy courts within this circuit have specifically held that under § 1112(b), dismissal is an "appropriate sanction" for a "continuous pattern of disregard" of the court's deadline for filing a disclosure statement. *In re Cordova Gonzalez*, 99 B.R. 188, 191 (Bankr.D.P.R.1989).[9]

Here, the Debtor enjoyed a hiatus of over 13 months since the filing of his petition. Although he received the benefit of several extensions during this time period, the Plan and Disclosure Statement which he eventually filed were both untimely and inadequate. He then ignored the Order to Show Cause. By his accumulated omissions, the Debtor delayed the proceedings and neglected to take advantage of the Code's protection and the bankruptcy court's repeated continuances. While a single ground is sufficient to warrant dismissal, here there are several. The record amply supports a determination under the above standards that there existed sufficient cause for dismissal or conversion under § 1112(b)(3), (b)(4)(E), and (b)(4)(F).

█ This conclusion is consistent with the First Circuit's recognition that it is "entirely appropriate" for a bankruptcy court to set and enforce deadlines. *Howard v. Lexington Inv.'s, Inc.*, 284 F.3d at 323 (affirming bankruptcy court's dismissal of chapter 13 case). Indeed, it is well established that courts have "inherent authority to manage their dockets and sanction parties who fail to comply with court orders and deadlines." *Roman v. Carrion (In re Rodriguez Gonzalez)*, 396 B.R. 790, 798 n. 6 (1st Cir. BAP 2008) (citations omitted) (addressing dismissal of adversary proceeding under Fed. R. Bankr.P. 7041).

### 2. Best Interests of Creditors

█ Although BAPCPA limited a bankruptcy court's discretion to dismiss or convert a chapter 11 case under § 1112(b), "the bankruptcy court still retains broad discretion to determine whether either conversion or dismissal is in the best interests of creditors and the estate after finding cause." *In re Gilroy*, 2008 WL 4531982, at *4.

█ Although the bankruptcy court in this case did not employ the phrase, "best interests of creditors," we may reasonably conclude that the court nonetheless considered this issue based on its pronouncement, "[N]ow the [c]ourt is determining that your creditors' rights have to be respected too." Indeed, an examination of the totality of circumstances in this case would have supported either dismissal of the case or conversion of the case to chapter 7. The record demonstrates a lack of diligence in two consecutive bankruptcy cases. It also reveals that, in the instant case, the Debtor only

---

9. Although the bankruptcy court acknowledged in *Cordova Gonzalez* that bankruptcy courts have civil contempt power to enforce their own orders under § 105, it held that the "contempt power should not be used when the Bankruptcy Code provides a specific and more adequate remedy," as in the case of § 1112(b) dismissals. 99 B.R. at 191 (citations omitted).

filed his Plan and Disclosure Statement when confronted with the Second Motion to Dismiss. Even then, the belated Plan and Disclosure Statement lacked essential disclosures. These failures were compounded by the Debtor's failure to abide by the Order to Show Cause. "Neither the court nor creditors should have to coerce or implore a debtor into fulfilling the obligations imposed upon it." *In re Berryhill*, 127 B.R. 427, 433 (Bankr. N.D.Ind.1991) (dismissing chapter 11 case for failure to abide by court orders). "Timely and accurate financial disclosure is the life blood of the [c]hapter 11 process." *Id.* "[D]elay which is accompanied by nondisclosure" is "of particularly pernicious effect in chapter 11 proceedings." *Id.*

■ Furthermore, the Debtor's repeated arguments concerning his difficulties in obtaining representation neither excuse nor justify his failures. As stated by one court, "there are limits to a court's indulgence, as *pro se* status does not exempt a party from compliance with relevant rules of procedural and substantive law." *In re WorldCom, Inc.*, No. 02–13533, 2006 WL 3782712, at *5 (Bankr. S.D.N.Y. Dec. 21, 2006) (internal quotations omitted) (citing *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir.1983)).

Consequently, in the absence of timely, complete financial disclosures and compliance with court orders, the bankruptcy court did not abuse its discretion in determining that dismissal was in the best interests of creditors and is entitled to substantial deference as to its choice of remedies. Furthermore, as the Debtor has not argued that conversion of the case to chapter 7 would have been more appropriate than dismissal, we need go no further to plumb its reasoning with respect to its choice of one remedy over another.

**B. Section 109(g)**

■ "Section 109 sets forth who may be a debtor under title 11." *In re Inesta Quinones*, 73 B.R. 333, 336 (Bankr.D.P.R. 1987). That statute specifically provides, in pertinent part, that

(g) Notwithstanding any other provision of this section, no individual or family farmer may be a debtor under this title who has been a debtor in a case pending under this title at any time in the preceding 180 days if—

(1) the case was dismissed by the court for willful failure of the debtor to abide by orders of the court, or to appear before the court in proper prosecution of the case.

11 U.S.C. § 109(g).

Although the Code does not prescribe what constitutes a "willful" failure to abide by orders of the court, the First Circuit infers willfulness from a "pattern of failure to abide by court orders." *Perez v. Fajardo Fed. Sav. Bank*, 116 F.3d 464, at *1 (1st Cir.1997) (citing *In re Herrera*, 194 B.R. 178, 189 (Bankr.N.D.Ill.1996) (holding repeated failure to attend § 341 meetings and make plan payments, coupled with refilings in unchanged circumstances, constituted willful failure to abide by court orders)). "Repeated conduct strengthens the inference that the conduct was deliberate." *In re Lee*, No. 11–8053, 2012 WL 1324234, at *9–10 (6th Cir. BAP Apr. 18, 2012) (citing *In re Nelkovski*, 46 B.R. 542, 544 (Bankr.N.D.Ill.1985)); *see also In re Pike*, 258 B.R. 876, 883 (Bankr.S.D.Ohio 2001) (holding that successive filings, "in the absence of changed circumstances," justified a 180–day disqualification) (citation omitted).

Here, the bankruptcy court dismissed the Debtor's case with prejudice only after he ignored the August 30, 2011 Order and the Order to Show Cause, and filed a Plan

and Disclosure Statement that were woefully defective. Furthermore, the subject bankruptcy case is not the first example of the Debtor's lack of diligence, his first case also having been dismissed for failure to abide by a court order. His successive filings within a one-year period, without any suggestion of a change in circumstances, are a strong indication of intentional conduct. Based on the repetitive nature of the Debtor's failures, an inference of willfulness was justified.

Moreover, the Debtor did not introduce any evidence on this point in the proceedings below. While dwelling on his purported right to counsel, the Debtor ignores the central issues in this appeal. His appellate brief is silent about the statutory provisions which govern the outcome of this case, namely, §§ 1112(b) and 109(g): he neglects his failure to respond to the Order to Show Cause, his failure to file a plan that was either timely or confirmable, the fact that the instant case was his second defective filing within a year, and the issue of the best interests of creditors. Additionally, he has failed to show any special circumstances which would outweigh the bankruptcy court's inherent authority to manage its own docket. Even if such circumstances existed, the Debtor has waived them on appeal by failing to mention them in his brief. *See Furness v. Wright Med. Tech., Inc. (In re Mercurio)*, 402 F.3d 62, 64 n. 1 (1st Cir.2005) (holding failure to brief argument constitutes waiver).

### CONCLUSION

The record amply supports the bankruptcy court's conclusion that, notwithstanding its extraordinary patience and its accommodations made to the Debtor, there was cause to both dismiss the Debtor's chapter 11 case pursuant to § 1112(b), and disqualify him from any further case filing for 180 days. Accordingly, the Order of the bankruptcy court is **AFFIRMED**.