**NOT FOR PUBLICATION**

# UNITED STATES BANKRUPTCY APPELLATE PANEL
# FOR THE FIRST CIRCUIT

———————————————————

**BAP NO. PR 19-044**

———————————————————

**Bankruptcy Case No. 16-08792-BKT**

———————————————————

**L&R DEVELOPMENT & INVESTMENT CORP.,**
**Debtor.**

———————————————————

**L&R DEVELOPMENT & INVESTMENT CORP.,**
**Appellant,**

**v.**

**HÉCTOR NOEL ROMÁN-RAMOS,**
**MYRNA ENID PÉREZ-VEGA,**
**THE ROMÁN LEGAL CONJUGAL PARTNERSHIP, and**
**NRR ENTERPRISES, LLC,**
**Appellees.**

———————————————————

**Appeal from the United States Bankruptcy Court**
**for the District of Puerto Rico**
**(Hon. Brian K. Tester, U.S. Bankruptcy Judge)**

———————————————————

**Before**
**Finkle, Fagone, and Katz,**
**United States Bankruptcy Appellate Panel Judges.**

———————————————————

**Carmen D. Conde Torres, Esq., and Luisa S. Valle Castro, Esq., on brief for Appellant.**
**Myrna L. Ruiz-Olmo, Esq., on brief for Appellees.**

———————————————————

**April 13, 2020**

———————————————————

**Fagone, U.S. Bankruptcy Appellate Panel Judge.**

L&R Development & Investment Corp. (the "Debtor") appeals from the bankruptcy court's order dismissing its chapter 11 case and the order declining to reconsider the dismissal. We **AFFIRM** both orders.

## BACKGROUND

The Debtor, a real estate development and investment corporation, filed a voluntary petition for chapter 11 relief in November 2016. Héctor Noel Román-Ramos, Myrna Enid Pérez-Vega, and The Román Legal Conjugal Partnership filed a proof of claim, asserting a secured claim of just under $1,000,000 and an unsecured claim approaching $6,000,000. In addition, an affiliate, NRR Enterprises, LLC, filed a proof of claim for approximately $290,000.[1] The Debtor objected to the claims and commenced three adversary proceedings against the Appellees. At the core of the litigation between the Debtor and the Appellees were funds previously held in an escrow account (the "Escrow Funds") and, according to the Debtor, "illegally" withdrawn by the Appellees.

## I.      The Motion to Dismiss

In January 2019, the Appellees filed a motion to dismiss the Debtor's chapter 11 case (the "Motion to Dismiss"). Invoking § 1112(b), they asserted there was cause for dismissal under multiple subsections of that statute.[2] Although the Appellees did not specifically reference

---

[1] NRR Enterprises, LLC (sometimes referred to in the record as "NNR Enterprises, LLC"), Héctor Noel Román-Ramos, Myrna Enid Pérez-Vega, and The Román Legal Conjugal Partnership are collectively referred to as the "Appellees."

[2] Unless expressly stated otherwise, all references to "Bankruptcy Code" or to specific statutory sections are to the Bankruptcy Reform Act of 1978, as amended, 11 U.S.C. §§ 101, et seq. All references to "Rule" are to the Federal Rules of Civil Procedure. All references to "Bankruptcy Rule" are to the Federal Rules of Bankruptcy Procedure.

2

§ 1112(b)(4)(F) (authorizing dismissal for "unexcused failure to satisfy timely any filing or reporting requirement"), they did make a general allegation that the "Debtor's behavior demonstrate[d] that it ha[d] no intention of complying with its duties as a Chapter 11 debtor in possession."

The Debtor objected and charged the Appellees with filing the motion in bad faith and causing the very delays they complained of in the motion. In addition, the Debtor represented that its monthly operating reports reflected no significant operations, as its business was "stalled" due to the Appellees' retention of the Escrow Funds.[3] The Debtor characterized the Motion to Dismiss as a "tactic" to avoid final adjudication of the adversary proceedings.

## II.     The February 6, 2019 Hearing on the Motion to Dismiss

At the outset of the hearing, the Appellees argued that the Debtor's "noncompliance with the Bankruptcy Code and the U.S. Trustee's guidelines" was at the heart of their request. They reiterated the five statutory grounds they had listed as cause for dismissal in the motion and added—for the first time with specificity—that the Debtor had been "unable" to file timely MORs and had failed to request extensions of time to file those reports. The Appellees maintained that, by taking judicial notice of its own docket, the bankruptcy court could find that the MORs were not being filed timely. They highlighted that the MOR for November 2018 was not filed until January 25, 2019, and the December 2018 report was not filed until January 22, 2019. The Debtor did not ask for a continuance or otherwise express a word of protest or surprise concerning the Appellees' focus on the late MORs. Attempting to minimize the length

_____

[3] The Debtor's monthly operating report(s) shall be referred to as "MOR" or "MORs."

3

of the delays, the Debtor countered: "We're not talking about a six-month delay, like other cases that we have seen."

### III. The Dismissal Order

The bankruptcy court entered its Opinion and Order on February 11, 2019 (the "Dismissal Order"), concluding that the Appellees had met their burden only as to the untimely filing of the MORs. In support, the court found the following facts:

> The Debtor filed the instant chapter 11 petition on November 1, 2016.
> . . . .
> The MOR for the month December 2016 was filed on January 26, 2017; The MOR for the month February 2017 was filed on March 27, 2017; The MOR for the month April 2017 was filed on May 24, 2017; The MOR for the month May 2017 was filed on June 27, 2017; The filing of the MOR[s] for the months of August, September and October 2017 were affected by Hurricanes Irma and Maria which struck Puerto Rico in September 2017; The MOR for the month of December 2017 was filed on February 12, 2018; The MOR for the month of April 2018 was filed on May 22, 2018; The MOR for the month of May 2018 was filed on June 22, 2018; The MOR for the month of November 2018 was filed on January 23, 2019; The MOR for the month of December 2018 was filed on January 22, 2019.

(footnote omitted).

Based on the foregoing, the court concluded there were no unusual circumstances, reasoning:

> The docket of this case shows that Debtor repeatedly filed tardy MORs without requesting an extension of time from the court. No orders from this court excusing such untimely filings are present in the docket of this case. Movant need not lump ancillary causes to dismiss to the one undisputedly established under 11 U.S.C. § 1112(b)(4)(F) in order to seek dismissal. This fact is undisputed because the Debtor[ ] ha[s] acknowledged that [it] did not timely file the MOR[s] in several instances. Moreover, the Debtor[’s] excuses do not rise to the high standard for "unusual circumstances" established in the First Circuit for failure to file timely MOR[s], especially when juxtaposed with [Andover Covered Bridge, LLC v. Harrington (In re] Andover Covered Bridge, LLC[)], 553 B.R. 162 (B.A.P. 1st Cir. 2016).

4

Then, focusing on whether conversion or dismissal was in the best interests of creditors and the estate, the court chose dismissal. A judgment of dismissal followed.

## IV.    The Motion to Reconsider

Citing Bankruptcy Rule 9023, the Debtor filed a motion seeking reconsideration of the Dismissal Order and/or additional or amended findings of fact (the "Motion to Reconsider").[4] The Debtor's chief complaint was that the Appellees' allegation regarding the late MORs first surfaced at the February 6, 2019 hearing, leaving the Debtor unable "to respond to this new allegation." The Debtor conceded, however, that the November 2018 report was late.

In order to justify the late filing of the MORs, the Debtor further asserted—for the first time—the presence of excusable neglect, explaining that although the November 2018 report was prepared timely, it was not filed timely "[f]or some unknown reason." In any event, the Debtor argued, because it had not received the Escrow Funds from the Appellees, the MORs showed little or no economic activity. To distinguish this case from Andover Covered Bridge, the Debtor asserted that the tardy filing of the November 2018 report "was an anomaly, not the norm." Insisting it had complied with its reporting duties, the Debtor maintained it had filed every MOR since the filing of its petition in 2016. Any tardiness in the filing of those reports, the Debtor further contended, was either attributable to Hurricane Maria or "because the 21st [of the month] was on a weekend and in these instances the reports were [at] the very worst 6 days late."

---

[4] In its appellate brief, the Debtor lists the bankruptcy court's refusal to make additional findings of fact as an issue on appeal yet fails to develop any argument related to that issue. The issue is therefore waived. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990).

Based on the foregoing, the Debtor argued that unusual circumstances were present to excuse the delays, but it did not clearly identify those circumstances. In further support of reconsideration, the Debtor asserted that the continuation of this chapter 11 case was in the best interest of creditors, as the adversary proceedings could yield up to $1,700,000 to pay their claims. On the other hand, dismissal, the Debtor contended, would cause a "windfall" for the Appellees.

The Appellees objected to reconsideration, arguing that the Debtor failed to establish a manifest error of law or present newly discovered evidence as required by Rule 59(e) (made applicable to bankruptcy by Bankruptcy Rule 9023). Likening this case to Andover Covered Bridge, they urged the bankruptcy court to follow that precedent and conclude that "the Debtor's vague excuses . . . [did] not constitute manifest error or injustice" warranting reconsideration.

In its reply to the Appellees' objection to reconsideration, the Debtor reiterated that the bankruptcy court "erred when it granted the Motion to Dismiss on grounds which were not originally pled and were raised for the first time at the hearing." The Debtor asked the bankruptcy court to apply the excusable neglect standard articulated in Pioneer Investment Services Co. v. Brunswick Assocs. Ltd. P'ship, 507 U.S. 380 (1993), requiring consideration of, among other things, the length of the delay and its potential impact on the judicial proceedings. In this regard, the Debtor again noted it filed only one report significantly late—the November 2018 report—and that delay "was attributable to an error of counsel."

## V. The Denial of Reconsideration

On September 16, 2019, the bankruptcy court entered an Opinion and Order denying the Motion for Reconsideration (the "Order Denying Reconsideration"). While the bankruptcy court

acknowledged that the Motion to Dismiss "did not *specifically* address [the] Debtor's failure to timely file its" MORs,  it observed that "the motion [ ] did focus exclusively on the non-exhaustive list of 16 grounds constituting 'cause' for dismissal of a chapter 11 case pursuant to [§] 1112(b)(4)."  The court was persuaded by the Appellees' assertion that the "[D]ebtor's behavior demonstrate[d] that it ha[d] no intention of complying with duties as a Chapter 11 debtor in possession," "*including but not limited to* payment of [U.S.] Trustee fees . . . ."  The court reasoned:

> Upon receipt of Movant's motion to dismiss and reply, L&R was on notice that the duties of a debtor under chapter 11 were going to be the central focus of the court's adjudication of this matter.  Indeed, the dismissal was based precisely on Debtor's lack of compliance with its duties.  As such, the court rejects Debtor's argument that it was deprived of the opportunity to properly address the tardy filing of its MOR[s] at the Hearing.
> . . . .
> At the Hearing, counsel for Movant requested the court take judicial notice of the docket of the case and directed the court to the legal docket of the instant case. Movant referred to the case docket repeatedly, stating for the record, each tardily filed MOR specifically by date and docket number.  In turn, counsel for Debtor performed the same exercise for the record, pointing out to the court by specific date and docket number the MOR[s] that had been timely filed.  Debtor's counsel noted that the November 2018 MOR had been delayed and stated that it was an oversight.  Debtor stressed that only the November 2018 MOR had been filed tardy.
>
> In addition, Debtor errs when it argues that it was unable to explain the reason why the November 2018 MOR was not timely filed.  Counsel for L&R stated at the Hearing that the late filing was an unfortunate oversight, period.  This is the exact rationale provided to the court in Debtor's motion for reconsideration.  No additional relevant information as to what caused Debtor's oversight in filing the November 2018 MOR, was provided in L&R's motion for reconsideration.
>
> At no point during the Hearing—as a result of the Movant's allegation of the late filed MOR[s]—did L&R request additional time to brief the issue with additional pleadings, request the continuation of the Hearing, or request a recess to obtain additional information.  There exists nothing in the record of the Hearing to support L&R's contention that it was deprived of the opportunity to properly

7

address these new allegations made by Movant in open court. That allegation is being brought for the first time in the motion for reconsideration.

(footnotes omitted). Additionally, the bankruptcy court noted the Debtor's failure to cite any legal authority to support its contention that the tardy November 2018 MOR was insufficient to establish cause to dismiss, adding: "[The Debtor] cites no authority because none exists." Clarifying its position still further, the court stated:

> This court dismisses this argument outright for two reasons. First, cause to dismiss exists under Section 1112(b)(4)(F) when there is an "unexcused failure to satisfy timely *any* filing or reporting requirement[.]" . . . Only one untimely filing will suffice. Second, the Opinion cites to nine separate MOR[s] which were filed beyond the twenty-one (21) days allowed by the Rules and U.S. Trustee Guidelines. Two of the MOR[s] were filed more than twenty (20) days late.

Based on the foregoing, the court explained, there was no error in its decision that cause existed to dismiss and that the case was devoid of unusual circumstances. Accordingly, the court ruled that "the Debtor's arguments under Fed. R. Civ. P. 59(e) [we]re without merit, and that dismissal was appropriate . . . ."

This appeal followed. On appeal, but for a few exceptions noted below, the parties reiterate the arguments they presented to the bankruptcy court.

## JURISDICTION

The Panel may consider appeals from final orders. 28 U.S.C. § 158(a)(1); see also Ritzen Grp., Inc. v. Jackson Masonry, LLC, 140 S. Ct. 582, 587 (2020); Bullard v. Blue Hills Bank, 135 S. Ct. 1686, 1692 (2015). "An order dismissing a chapter 11 case is a final, appealable order." In re Colón Martinez, 472 B.R. 137, 143 (B.A.P. 1st Cir. 2012) (citations omitted). In the past, the Panel has held that an order denying reconsideration is final if the underlying

order is final and, together, the two orders end the litigation on the merits.  See, e.g., Jeffrey P. White & Assocs., P.C. v. Fessenden (In re Wheaton), 547 B.R. 490, 495 (B.A.P. 1st Cir. 2016) (citing Schwartz v. Schwartz (In re Schwartz), 409 B.R. 240, 245 (B.A.P. 1st Cir. 2008)). Applying these legal standards here, we conclude that the Panel has jurisdiction to hear this appeal.

## STANDARD OF REVIEW

When reviewing a dismissal of a bankruptcy case under § 1112(b), the Panel reviews the bankruptcy court's findings of fact for clear error and conclusions of law de novo.  In re Andover Covered Bridge, LLC, 553 B.R. at 170-71 (citing In re Colón Martinez, 472 B.R. at 143). Because the bankruptcy court "retains broad discretion to determine whether either conversion or dismissal is in the best interests of creditors and the estate after finding cause," the Panel reviews the bankruptcy court's decision as to the appropriate relief for an abuse of discretion.  Id. at 171 (citing Gilroy v. Ameriquest Mortg. Co. (In re Gilroy), BAP No. NH 07-054, 2008 WL 4531982, at *4 (B.A.P. 1st Cir. Aug. 4, 2008)).  In addition, an order denying relief under Bankruptcy Rule 9023 is also reviewed for an abuse of discretion.  Id. (citing Scotiabank de P.R. v. Medina Lorenzo (In re Medina Lorenzo), BAP No. PR 15-011, 2015 WL 4537792, at *4 (B.A.P. 1st Cir. July 24, 2015), aff'd, 637 F. App'x 623 (1st Cir. 2016)).  "A court abuses its discretion if it does not apply the correct law or if it rests its decision on a clearly erroneous finding of material fact." De Jounghe v. Lugo Mender (In re De Jounghe), 334 B.R. 760, 765 (B.A.P. 1st Cir. 2005) (citation omitted).

## DISCUSSION

### I.     The Section 1112(b) Standard

Section 1112(b) authorizes the dismissal or conversion of a chapter 11 case "for cause." 11 U.S.C. § 1112(b)(1). Section 1112(b)(4) provides a "nonexclusive list of what constitutes cause." In re Colón Martinez, 472 B.R. at 144 (citation omitted). "The initial burden is on the movant" to demonstrate by a preponderance of the evidence that there is cause for either dismissal or conversion. In re Andover Covered Bridge, LLC, 553 B.R. at 171. "Once cause is found, the burden shifts to the opposing party to show why dismissal or conversion would not be in the best interests of the estate and the creditors." In re Costa Bonita Beach Resort, Inc., 513 B.R. 184, 195 (Bankr. D.P.R. 2014) (citation omitted). In short, "[w]hen an interested party files a motion to convert or dismiss a Chapter 11 case, the bankruptcy court inquires as follows: Does 'cause' exist to convert or dismiss the case; and, if so, is conversion or dismissal in the best interests of creditors and the estate?" Hoover v. Harrington (In re Hoover), 828 F.3d 5, 8 (1st Cir. 2016) (citing 11 U.S.C. § 1112(b)(1)). After a finding of cause, "the court's discretion is limited; it must grant some form of relief unless § 1112(b)(2) applies." In re Korn, 523 B.R. 453, 465 (Bankr. E.D. Pa. 2014) (footnote omitted) (citation omitted); see also In re Costa Bonita Beach Resort, Inc., 513 B.R. at 195.

### II.     The Standard Applied

#### A.     Cause

In their Motion to Dismiss, the Appellees sought dismissal of the Debtor's case specifically under § 1112(b)(4)(C), (I), (J), and (K), and generally for the Debtor's failure to satisfy its obligations under chapter 11. At the February 6, 2019 hearing, the Appellees added as

10

a specific ground for dismissal the Debtor's failure to timely file monthly operating reports under § 1112(b)(4)(F). The bankruptcy court granted dismissal solely on this ground, stating the Appellees had met their burden "only as to the untimely filing of the MORs . . . ." Accordingly, our analysis begins here and, because the First Circuit instructs that one ground for dismissal is enough, In re Hoover, 828 F.3d at 9, our "cause" analysis also ends with § 1112(b)(4)(F).

### 1. The Debtor Had Reasonable Notice of the Appellees' § 1112(b)(4)(F) Argument

The Debtor's argument that the Motion to Dismiss "did not . . . even mention the late filing of Monthly Operating Reports" echoes its argument made in the proceedings below that it lacked sufficient notice of the Appellees' § 1112(b)(4)(F) claim. We address this procedural issue first.

Despite its arguments to the contrary, the Debtor was reasonably on notice that the late MORs were or would become an issue. The Appellees framed the Motion to Dismiss, generally, under the rubric of § 1112(b) and its "cause" requirement. In the Motion to Dismiss, the Appellees also asserted, generally: (1) "cause may include 'unreasonable delay by the debtor that is prejudicial to creditors'"; and (2) the "Debtor's behavior demonstrates that it has no intention of complying with its duties as a Chapter 11 debtor in possession." In their reply to the Debtor's objection, the Appellees reiterated there was cause for dismissal under § 1112(b) insofar as the "Debtor has failed to comply with its duties and obligations, including *but not limited to* payment of [U.S.] Trustee fees . . . ." Moreover, prior to the hearing, the Appellees repeatedly apprised the Debtor that its failure to satisfy its obligations as a chapter 11 debtor was an asserted ground for dismissal. Because these obligations include a monthly reporting duty, the Debtor should have anticipated that the issue of the late MORs might be raised at the hearing. All of this

suggests under the circumstances that: (1) the Debtor was reasonably informed that compliance with its reporting obligations was a potential issue; and (2) the Debtor was provided with a "meaningful opportunity to prepare and be heard on the issue." In re Hoover, 828 F.3d at 9-10 (stating due process requires that notice be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections") (citing Mullane v. Cent. Hanover Bank & Tr. Co., 339 U.S. 306, 314 (1950)). Even if we were persuaded that the lack of a specific reference in the Appellees' motion was problematic, another hurdle stands in the Debtor's way: when the Appellees raised the late reports as a ground for dismissal during the hearing, the Debtor did not object or ask for a continuance of the hearing. Instead, the Debtor conceded that the November 2018 report and other reports were late. The Debtor cannot now complain, on appeal, of the injury it allegedly suffered in the trial court when the Debtor belatedly—in its Motion for Reconsideration— informed the trial court of the alleged injury. See Dillon v. Select Portfolio Servicing, 630 F.3d 75, 80 (1st Cir. 2011) (stating arguments raised for first time in a motion for reconsideration are not preserved for appeal purposes).

### 2. Unexcused Failure to Timely File Monthly Operating Reports Constitutes Cause

Our analysis advances to the merits of the bankruptcy court's cause determination. Pursuant to § 1112(b)(4)(F), an "unexcused failure to satisfy timely *any* filing or reporting requirement established by [the Bankruptcy Code] or by any rule applicable to a case under [chapter 11]" is cause for conversion or dismissal of a chapter 11 case. 11 U.S.C. § 1112(b)(4)(F) (emphasis added).

12

The Operating Guidelines and Reporting Requirements for Chapter 11 Cases (Region One) (the "Operating Guidelines") established by the United States Trustee for chapter 11 debtors-in-possession require chapter 11 debtors to file monthly operating reports fourteen days after the close of the month.[5]  Puerto Rico Local Bankruptcy Rule 2015-2(a) requires, in relevant part, that chapter 11 debtors file monthly operating reports no later than the twenty-first day of the subsequent month:

> **(a) Chapter 11 and 13 Monthly Financial Reports.**  A chapter 13 business debtor . . . or a chapter 11 debtor in possession . . . must file with the court a monthly financial report signed under penalty of perjury, and served on the United States [T]rustee and each member of any committee elected or appointed. Each report is due on the twenty-first (21st) day of the subsequent month.

P.R. LBR 2015-2(a).[6]

The Panel has already stressed the significance of the chapter 11 debtor's obligation to file timely monthly operating reports.  See Andover Covered Bridge, LLC, 553 B.R. at 173. When previously confronted with a chapter 11 debtor's failure to satisfy that obligation in Andover Covered Bridge, the Panel stated: "Monthly reports and the financial disclosures

---

[5]  The Operating Guidelines provide, in pertinent part: "Debtors are required to submit to the United States Trustee Operating Reports until the court enters a Final Decree, dismisses the case, or converts the case to another chapter in bankruptcy."  See The Operating Guidelines, www.justice.gov.ust-regions r01/file/operating_guidelines.pdf/download at p.14 (last visited Apr. 3, 2020).  In addition, and of relevance here, the Operating Guidelines further state that for the pre-confirmation period: "The Debtor must file or submit Monthly Operating Reports each month even if no financial activity occurred during a reporting period."  Id.  With respect to the deadline for filing such reports, the Operating Guidelines indicate "all reports must be filed or submitted by the fourteenth (14th) day of the month following the reporting period."  Id. at p.15.

[6]  The parties do not address the discrepancy between the deadline for the filing of monthly reports prescribed by the Operating Guidelines and the deadline set forth in the Puerto Rico Local Bankruptcy Rules.  Since the Puerto Rico Local Bankruptcy Rules provide a later deadline, failure to satisfy that deadline will also entail a failure to satisfy the deadline under the Operating Guidelines.  Further, it appears that the bankruptcy court applied the local rule and thus we do as well.

contained within them 'are the life-blood of the Chapter 11 process' and are more than 'mere busy work.'" Id. (quoting In re Whetten, 473 B.R. 380, 383 (Bankr. D. Colo. 2012)). The Panel further explained:

> "Monthly operating reports provide necessary information to the Court, creditors, and other parties in interest about the progress and prospects of a debtor's reorganization efforts." ABCD Holdings, LLC v. Hannon (In re Hannon), 512 B.R. 1, 19 (Bankr. D. Mass. 2014) (citation omitted) (internal quotations omitted). "Without these reports, the [U.S. Trustee] and creditors cannot determine when a debtor is incurring additional losses, is rendered administratively insolvent, or is transferring assets without authorization." In re Whetten, 473 B.R. at 383. "The reporting requirements provide the primary means for monitoring the debtor's compliance with the Code's requirements and they serve as a litmus test for a debtor's ability to reorganize." Id. at 384. Consequently, "[r]efusal or inability to provide financial disclosure sounds the death knell of a Chapter 11 case." In re Costa Bonita Beach Resort, Inc., 513 B.R. at 199 (citations omitted) (internal quotations omitted). "The failure to file monthly operating statements . . . 'whether based on inability to do so or otherwise, undermines the Chapter 11 process and constitutes cause for dismissal or conversion of the Chapter 11 proceedings.'" Id. (citation omitted).

Id.; see also In re Colón Martinez, 472 B.R. at 146 ("Neither the court nor creditors should have to coerce or implore a debtor into fulfilling the obligations imposed upon it.") (quoting In re Berryhill, 127 B.R. 427, 433 (Bankr. N.D. Ind. 1991)).

In Andover Covered Bridge, the debtor filed the monthly operating reports due for August and September 2015 on October 22, 2015—one day after the United States Trustee filed a motion to dismiss or convert the case. 553 B.R. at 168. Then, on November 30, 2015, the Debtor belatedly filed its October monthly operating report. Id. In its response to the United States Trustee's motion to dismiss, the debtor in Andover Covered Bridge asserted—much like the Debtor before us—that "all monthly operating reports had been filed, albeit late because they were 'caught in counsel['s] spam filter and not discovered until after the Motion to Dismiss was filed[.]'" Id. The Andover Covered Bridge Panel concluded that the record clearly established

14

the debtor's failure to file several monthly operating reports in a timely manner; although the debtor blamed the late filing on its attorney's email system (among other things), the Panel ruled that the bankruptcy court did not err in finding cause existed to dismiss the case.  Id. at 174.

Courts beyond our circuit have similarly expressed the significance of the monthly reporting requirement and have dismissed chapter 11 cases for failure to comply with it. For example, in Myers v. Myers (In re Myers), BAP No. KS-04-054, 2005 WL 1324019, at *3 (B.A.P. 10th Cir. May 25, 2005), the court affirmed a chapter 11 dismissal due to the debtor's failure to file monthly reports.  While the Myers decision does not specify how many reports were late or the length of the delay for each report, the court was clear: "The importance of [ ] monthly report[s] cannot be over-emphasized."  Id. at *2.  That panel elaborated: "Without the required reports the creditors are unable to determine if the debtor is exercising its powers in a manner beneficial to them and non-compliance is prejudicial to their interests."  Id. (citation omitted).  Similarly, in In re Whetten, a Colorado bankruptcy court dismissed a chapter 11 bankruptcy case solely on the grounds of the debtor's "reporting deficiencies."  473 B.R. at 385. Dicta in Whetten is instructive:

> [N]on-compliance [with the reporting obligation] is not a "mere technicality."
> In re Ronald Kern & Sons, 2002 WL 1628908, at *1 (W.D.N.Y. June 11, 2002).
> "[H]abitual non-compliance . . . calls in to question a debtor's ability to
> effectively reorganize."  In re Tucker, 411 B.R. 530, 535 (Bankr. S.D. Ga. 2009)
> (quoting In re 210 West Liberty Holdings, LLC, 2009 WL 1522047, at *7 (Bankr.
> N.D. W. Va. May 29, 2009)).  If a debtor does not fulfill this basic obligation
> during the Chapter 11 case, when it knows it will have to come before the court
> on any number of occasions, how can the creditors have any confidence that the
> debtor will timely and accurately report its income and make the required
> distributions under its plan, when the court and the [United States Trustee] are no
> longer monitoring the case?

Id. at 384.

15

Here, the Debtor concedes that there were multiple late reports. The gist of the Debtor's argument seems to be either that there were not enough late reports, or that the reports were not late enough, to justify dismissal. These arguments are unpersuasive. Section 1112(b)(4)(F) does not require multiple late filings. "Any" late filing suffices for a cause determination under the statute. See 11 U.S.C. § 1112(b)(4)(F). Further, case law is unequivocal: "A debtor ignores th[e] basic duty" to file timely monthly operating reports "at its own peril." In re Hoyle, No. 10-01484-TLM, 2013 WL 210254, at *10 (Bankr. D. Idaho Jan. 17, 2013). Accordingly, the bankruptcy court did not err in concluding that the Appellees satisfied their burden of establishing cause to dismiss under § 1112(b)(4)(F).[7]

**B.      Section 1112(b)(2) Exception to Dismissal or Conversion**

As noted above, if the bankruptcy court finds cause, it may not dismiss or convert a case if the § 1112(b)(2) exception to dismissal or conversion applies. When all of the elements of § 1112(b)(2) are parsed and aggregated, the § 1112(b)(2) defense to conversion or dismissal of a chapter 11 case requires a showing of six elements:

(1) unusual circumstances exist;

(2) conversion or dismissal is not in the best interests of creditors and the estate;

(3) there is a reasonable likelihood of confirmation of a plan within any time period mandated by the Code or, otherwise within a reasonable time;

(4) the grounds for dismissal for cause do not include those set forth in § 1112(b)(4)(A);

---

[7] The Debtor never argued in favor of conversion of the case to chapter 7 in lieu of dismissal. Therefore, we need not "plumb [the court's] reasoning with respect to its choice of one remedy over another." In re Colón Martinez, 472 B.R. at 146.

(5) there is a reasonable justification for the act or omission of the debtor; and

(6) the act or omission may be cured within a reasonable period of time.

In re Korn, 523 B.R. at 465 (footnote omitted) (internal quotation marks omitted); see also Francis v. Harrington (In re Francis), BAP No. MB 18-012, 2019 WL 1265316, at *6 (B.A.P. 1st Cir. Mar. 14, 2019) (identifying same elements) (citation omitted). Because the statute is written in the conjunctive, "[t]he debtor has the burden of establishing that all the factual elements of § 1112(b)(2) exist." In re Andover Covered Bridge, LLC, 553 B.R. at 176. As the bankruptcy court's § 1112(b)(2) analysis centered on the lack of "reasonable justification" as well as the absence of "unusual circumstances," we examine both of those findings, with the understanding that the absence of only one element under the statute will deprive the Debtor of its protection.

### 1.       Reasonable Justification

The Debtor asserts that the tardiness of the November 2018 report was "due to an oversight" or "human error." The Debtor does not offer an explanation for the other late MORs, but instead chooses only to minimize their significance. Although the Code does not define what constitutes a reasonable justification under § 1112(b)(2), case law is instructive. The Panel stated in Andover Covered Bridge when it rejected a similar "human error" excuse: "It was the Debtor's obligation to comply with its reporting requirements and to ensure that its counsel timely filed the reports with the U.S. Trustee and the bankruptcy court." 553 B.R. at 173. Moreover, even if the late filing(s) resulted from the carelessness of the Debtor's attorney, it is well-established that the attorney's actions would be attributable to the client. In re Bella Fiore LLC, No. 14-14303 (RG), 2016 WL 4480717, at *10 (Bankr. D.N.J. Aug. 23, 2016) (citing Nemaizer v. Baker, 793 F.2d 58, 62 (2d Cir. 1986)).

17

The Debtor suggests that the offending reports were inconsequential because they showed little activity. We reject any suggestion that the late reports in this case were unimportant. The Code suggests that the late filing of "any" report is serious. See 11 U.S.C. § 1112(b)(4)(F) (authorizing dismissal for the unexcused failure to file "any" required report). If we needed to go further on this score (and we do not), the language of the Operating Guidelines precludes the Debtor's argument that there were no financial changes worth reporting: "The Debtor must file or submit Monthly Operating Reports each month even if no financial activity occurred during a reporting period." See Operating Guidelines and Reporting Requirements for Chapter 11 Cases (Region One).

In light of the foregoing, there is ample support in the record and the case law for the bankruptcy court's conclusion that the Debtor did not establish a reasonable justification for failing to file timely MORs. Although our examination of whether the Debtor is entitled to the benefit of the § 1112(b)(2) exception to dismissal could end here, we address the Debtor's failure to satisfy its burden of establishing unusual circumstances.

### 2. Unusual Circumstances

The Debtor's first mention of "unusual circumstances" appeared in its Motion for Reconsideration. Because the Debtor failed to raise this necessary element of the § 1112(b)(2) defense in its objection to the Motion to Dismiss or at the hearing on the motion, we do not consider the argument on appeal. "[B]edrock principle dictates that '[a] motion for reconsideration is not a vehicle for the introduction of arguments that could and should have been made to the [ ] court earlier.'" J.R. Insulation Sales & Servs., Inc. v. P.R. Elec. Power Auth., 482 B.R. 47, 54-55 (D.P.R. 2012) (quoting Fábrica de Muebles J.J. Álvarez, Incorporado

18

v. Inversiones Mendoza, Inc., 682 F.3d 26, 33 (1st Cir. 2012)).  Indeed, the law in this circuit is unequivocal: "When a party makes an argument for the first time in a motion for reconsideration, the argument is not preserved for appeal."  Dillon, 630 F.3d at 80 (citation omitted).

Were we to consider the Debtor's unusual circumstances argument, however, we would begin by observing that the record easily supports the bankruptcy court's conclusion that the Debtor failed to demonstrate "unusual circumstances."  First, the Debtor's sole witness did not testify regarding this issue, causing an evidentiary void.  Second, the Motion to Dismiss was "precipitated [by] and [ ] grounded in difficulties of the Debtor's own making"—namely, its failure to comply with the financial reporting requirements of the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure.  In re Korn, 523 B.R. at 469.  This "cannot be characterized as unusual."  Id.  Accordingly, the court did not err when it determined that unusual circumstances were not present.

As the Debtor failed to establish two of the required elements for successfully invoking a § 1112(b)(2) defense, the bankruptcy court did not err in concluding that defense was unavailable to the Debtor.

## III.    The Order Denying Reconsideration

We treat the Motion for Reconsideration—filed within 14 days of the issuance of the Dismissal Order—as a motion to alter or amend a judgment under Bankruptcy Rule 9023. See Ramirez Rosado v. Banco Popular de P.R. (In re Ramirez Rosado), 561 B.R. 598, 607 (B.A.P. 1st Cir. 2017).  To prevail on a Rule 59(e) motion, and by extension, a Bankruptcy Rule 9023 motion, the moving party must establish "a manifest error of law or present newly discovered evidence."  Landrau-Romero v. Banco Popular de P.R., 212 F.3d 607, 612 (1st Cir.

2000) (citation omitted). Here, the record is devoid of a manifest error of law or newly discovered evidence that would warrant the extraordinary relief of reconsideration. The Debtor has established no reason for us to depart from the overarching goals of "finality and conservation of scarce judicial resources." In re Ramirez Rosado, 561 B.R. at 607 (citation omitted). As we have previously warned:

> A motion for reconsideration is a weapon that should not be deployed reflexively by the losing party in a contested matter or an adversary proceeding. We recognize that lawyers are duty-bound to advocate zealously on behalf of their clients. But not every adverse order or judgment is predicated on a manifest error of law and the instances of newly discovered evidence are few and far between.

Id. at 608.

## IV. The Debtor's Arguments Regarding the Court's Conduct

The Debtor devotes a meaningful portion of its appellate brief to its arguments that the bankruptcy court (1) discriminated against it; and (2) delayed in administering the case. Both arguments are raised for the first time on appeal. Accordingly, they are waived. See Abdallah v. Bain Capital LLC, 752 F.3d 114, 121 (1st Cir. 2014) (stating arguments made for the first time on appeal are waived).[8]

---

[8] Even if the discrimination claim were not waived, the Debtor could not satisfy the test in this circuit for determining whether a judge's impartiality might reasonably be questioned. See United States v. Cowden, 545 F.2d 257, 265 (1st Cir. 1976). Moreover, "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion." Liteky v. United States, 510 U.S. 540, 555 (1994). Apart from the adverse rulings it appeals, the Debtor points to no comments by the court that displayed "a deep-seated . . . antagonism that would make fair judgment impossible." Id.

## CONCLUSION

For the foregoing reasons, we **AFFIRM** the Dismissal Order and the Order Denying Reconsideration.